**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**VIRGINIA JACKSON,**

    **Plaintiff,**

**v.**                                            **Case No.  8:06-cv-1631-T-26TBM**

**MICHAEL J. ASTRUE,[1]
Commissioner of the United States
Social Security Administration,**

    **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits.[2] Because the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, I recommend that it be reversed.

I.

Plaintiff was forty-three years of age at the time of her administrative hearing. She stands 5'7" tall and weighed 170 pounds. Plaintiff has a high school education with one year

---

[1] Michael J. Astrue became Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as Defendant in this suit.

[2] This matter comes before the undersigned pursuant to the Standing Order of this court dated August 28, 1987. See also M.D. Fla. R. 6.01(c)(21).

of college. Her past relevant work was as a certified nursing assistant. Plaintiff applied for disability benefits in November 2002, alleging disability as of May 8, 2001, by reason of problems with her right lower extremity.[3] Plaintiff's application was denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented by counsel at the hearing and testified in her own behalf. Additionally, a vocational expert was called by the ALJ.

In essence, Plaintiff testified that she could no longer work after she was injured on the job when she caught someone from falling. She broke her right tibia bone, and injured her knee, foot and her back. The pain in her knees and back and the resultant limitations prevent her from working. In addition to wearing a cast on that leg, she had arthroscopic surgery in her right knee, she wore orthopedic shoes which helped somewhat, and a brace for her right foot. Plaintiff testified that she stopped seeking medical treatment for her back, knee, or leg when she lost her medical insurance in August 2003.

Plaintiff also suffers from depression, which causes her to not eat or sleep and to experience mood swings. By Plaintiff's testimony, she is forgetful, has trouble focusing, often has thoughts of hurting herself, and sees or hears things that are not there. Plaintiff has seen a psychiatrist and was obtaining help through a social services center. The sessions with a psychiatrist and prescription medication help some.

Plaintiff also claims to suffer from fatigue related to anemia.

---

[3]Plaintiff subsequently amended her onset date to January 1, 2002. See (R. 364-65).

Plaintiff estimated that she could stand for about thirty minutes and sit for about thirty minutes up to an hour. When she sits for that long, she sits with her feet elevated on a foot stool, and she must try to stand up and change positions. She also becomes irritable because of the pain in her back. Plaintiff testified that she has problems lifting things because of her back and can only lift about a half-gallon of milk. Plaintiff uses an inhaler for her asthma twice a day.

Plaintiff testified to limited daily activities. She lives with an adult son who helps her out with bills and things like that. Plaintiff testified that she does not socialize at all and only leaves the house to go to and from her doctors' appointments. During the day, she spends some time in the living room and some time in the bedroom. She does some light housework, such as folding the laundry and washing the dishes, but she does not do any yard work or go outside. She no longer drives because her medication for depression makes her drowsy. See Plaintiff's testimony (R. 363-64, 366-77).

Steven Simon, a vocational expert ("VE") testified upon an assumption of an individual with Plaintiff's age and education, and who could lift ten pounds frequently and twenty pounds occasionally; sit and stand for six hours in an eight-hour day; has an unlimited ability to push and pull with hand and foot controls; could never use ladders, ropes and scaffolds; was limited to occasional postural movements such as climbing, balance, stooping, kneeling, crouching and crawling; could have no concentrated exposure to machinery, heights, and uneven terrain; and was limited to routine, repetitive tasks.[4] Upon this

---

[4] The ALJ indicated these restrictions came from exhibits 7F and 12F. (R. 378-79).

assumption, the VE opined that such a person could not perform Plaintiff's past relevant work but could perform jobs such as assembler production, assembler small products I, hand packer or packager, bagger, packing line worker, or survey worker. Upon the additional assumption that the individual had the same mental restrictions identified in the first hypothetical but could only sit for four out of eight hours, stand for four out of eight hours and lift no more than ten pounds, the VE opined that the individual could perform jobs such as surveillance system monitor, food and beverage order clerk, or appointment clerk. Lastly, upon the assumption that the individual would miss work two or three days a week due to anxiety and depression, the VE opined that there would be no jobs available. See VE's testimony (R. 377-80).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are discussed herein as necessary.

By his decision of September 9, 2005, the ALJ determined that while Plaintiff has severe impairments related to major depression, generalized anxiety disorder, asthmatic bronchitis, anemia, Morton's neuroma, status post arthroscopic surgery of the right knee, and chronic pain syndrome, she nonetheless had the residual functional capacity to perform less than the full range of sedentary work. Upon this finding and testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to her in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 18-19). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See id. at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are

supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

### III.

The Plaintiff raises two claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The hypotheticals presented by the ALJ to the VE were incomplete and did not include all of claimant's impairments and therefore lacked specificity rendering the ALJ's decision not supported by substantial evidence; and

(2) The ALJ failed to follow the Commissioner's pain standards thereby rendering the decision unsupported by substantial evidence.
(Doc. 23 at 9, 17).

By her first claim, Plaintiff argues that the hypothetical questions the ALJ posed to the VE are incomplete and therefore his reliance on the VE's responses to the same are

unsupported by substantial evidence. Plaintiff primarily takes issue with the ALJ's reliance on exhibit 12F in identifying the mental restrictions included in the hypothetical questions.[5] While the ALJ referenced exhibit 12F to the VE, Plaintiff contends that, aside from that of "routine repetitive work," the ALJ failed to include any of the mental limitations identified therein in the hypothetical questions. By Plaintiff's reading of exhibit 12F, the psychologist identified the following mental limitations: "simple" routine, repetitive work, not just routine, repetitive work as employed by the ALJ; mood swings of depression and mania; a decreased ability to maintain relationships with others in the work setting; a decreased ability to avoid distraction; poor coping skills affecting her ability to handle minimal stress and changes in work routine; and a decreased ability to perform activities within a schedule, maintain regular attendance, and be punctual, which Dr. Hodan indicated could be performed only "some of the time."[6] Plaintiff also argues that the ALJ failed to consider her significant and chronic fatigue and abdominal pain and should have included such in the hypothetical questions to the VE. (Doc. 23 at 9-16).

The Commissioner responds that any error the ALJ may have committed in addressing the opinion of the consulting psychologist (Dr. Hodan) is harmless and Plaintiff has not established otherwise. The Commissioner does not address Plaintiff's allegations with regards to Ms. Cintron's opinions. (Doc. 24 at 5-8).

---

[5]Exhibit 12F includes a psychological evaluation report and medical source statement regarding Plaintiff's ability to do work-related activities (mental) completed by consulting psychologist Gerold J. Hodan on April 14, 2005. (R. 313-18).

[6]Earlier in her memorandum, Plaintiff also takes issue with the ALJ's failure to include in the hypothetical questions the mental limitations identified by Susan Cintron, ARNP. See (Doc. 23 at 7).

7

While Plaintiff frames this first issue around allegedly incomplete hypothetical questions, her arguments essentially boil down to the ALJ's consideration of the record evidence regarding her mental impairments and subsequent determination of her mental residual functional capacity. In addressing the medical evidence of record, the ALJ must state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error. Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987). Residual functional capacity ("RFC") is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. Lewis v. Callahan, 125 F.3d 1436,1440 (11th Cir. 1997); 20 C.F.R. § 404.1545(a). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. Lewis, 125 F.3d at 1440.

Here, two sources provided statements regarding Plaintiff's mental RFC.[7] Upon referral from the Office of Disability Determinations, Dr. Hodan conducted a psychological evaluation of Plaintiff in April 2005. (R. 313-16). The psychologist also completed a form captioned "Medical Source Statement of Ability to do Work-Related Activities (Mental)," which rated certain abilities of Plaintiff as excellent, good, fair or poor.[8] (R. 317). According

---

[7] Upon referral from Worker's Compensation, Plaintiff was seen on at least two occasions in late 2003 by psychiatrist Hansa S. Hussain, M.D. (R. 174-78). Dr. Hussain did not specifically comment on Plaintiff's mental RFC, but reported that "Patient at this time is very depressed, anxious, and angry and not capable of returning to work." (R. 174).

[8] The ratings were defined as follows: excellent - the ability is not limited; good - the individual can perform the activity satisfactorily most of the time; fair - the individual can perform the activity satisfactorily some of the time; and poor - no useful ability to function. (R. 317). I read the definition of "fair" as imposing an occasional limitation. Additionally, I agree with Plaintiff that the definition of "fair" is inconsistent with Social Security Ruling 96-8p, which states that the claimant must have the RFC to perform work on a "regular and

to this practitioner, Plaintiff retained a "fair" ability to understand and remember detailed instructions; carry out detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual; work with or near others without being distracted by them; complete a normal workday or workweek; perform at a consistent pace; get along with coworkers and peers; maintain socially appropriate behavior; and respond appropriately to changes in the work setting. (R. 317-18). Susan Cintron, ARNP (Advanced Registered Nurse Practitioner), treated Plaintiff for mental concerns from April 2004 through July 2005. See (R. 324-337). In August 2005, Ms. Cintron completed a checklist type form captioned Mental RFC Assessment. In her opinion, Plaintiff was markedly limited in eight categories of mental abilities and moderately limited in seven categories.[9] (R. 344-45). After citing to certain of these opinions, the ALJ determined that Plaintiff retained the capacity for less than

---

continuing basis," which means "8 hours a day for 5 days a week, or an equivalent work schedule." See SSR 96-9p, 1996 WL 374198, *2 (S.S.A.).

[9]Marked limitations were found in the ability to (1) understand and remember detailed instructions, (2) carry out detailed instructions, (3) maintain attention and concentration for extended periods, (4) work in coordination with or proximity to others without being distracted by them, (5) make simple work-related decisions, (6) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (7) accept instructions and respond appropriately to criticism from supervisors, and (8) respond appropriately to changes in the work setting. (R. 344-45). Moderate limitations were found in the ability to (1) understand and remember very short and simple instructions, (2) perform activities within a schedule, maintain regular attendance, and be punctual, (3) interact appropriately with the general public, (4) ask simple questions or request assistance, (5) be aware of normal hazards and take appropriate precautions, (6) travel in unfamiliar place or use public transportation, and (7) set realistic goals or make plans independently of others. Id.

a full range of sedentary exertional activity[10] and work that required "only routine, repetitive tasks." (R. 16). In fashioning this RFC, the ALJ did not state the weight accorded the opinions of Dr. Hodan or Ms. Cintron, although in posing hypothetical questions to the VE, the ALJ referred to limitations in Dr. Hodan's records at exhibit 12F. See (R. 379).

Upon careful consideration, I conclude that the ALJ erred by failing to state with particularity the weight accorded the opinions of Dr. Hodan and Ms. Cintron and the reasons therefor when determining Plaintiff's mental RFC, and his failure to do so constitutes reversible error.[11] See MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). Notably, the ALJ did not explicitly discount either opinion and both of the opinions suggest limitations in excess of those found in the ALJ's mental RFC determination. In determining that Plaintiff was limited to only routine, repetitive work, despite suffering from major depression and generalized anxiety disorder, it appears that the ALJ selectively relied on certain aspects of the record to conclude that she could perform such work. To do so is improper. See McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986) (providing that it is improper for an ALJ to focus on one aspect of the evidence while disregarding or ignoring other contrary

---

[10]In particular, the ALJ found that Plaintiff could lift no more than ten pounds, sit for no more than four hours in an eight-hour workday, stand/walk no more than four hours in an eight-hour workday, perform postural activities only occasionally, and have no concentrated exposure to moving machinery, unprotected heights, and uneven terrain. (R. 16).

[11]The treating physician rule, which requires in part that a treating physician's testimony be accepted as true where the Commissioner has ignored or failed to properly refute the evidence, see MacGregor, 786 F.2d at 1053, is inapplicable in these circumstances. Dr. Hodan, as a consulting examiner, was not a treating source. While Ms. Cintron was a treating source, she was not a treating physician. However, she is an acceptable "other source" to comment on how a claimant's impairments affect the claimant's ability to work. See 20 C.F.R. § 404.1513(d)(1).

evidence).  The Commissioner's rebuttal might be persuasive if the only limitation the ALJ had omitted from Plaintiff's mental RFC been the word "simple" and he had not selectively chosen this limitation while ignoring others.  However, in light of the ALJ's failure to address the various other limitations and state the weight accorded thereto, I cannot conclude that any error on the ALJ's part was harmless.

On remand, the ALJ shall, at a minimum, state the weight accorded all medical and other opinions, particularly those relied upon in determining Plaintiff's mental and physical RFC, and the reasons for determining such.[12]  All vocationally significant limitations determined to exist shall be included in any hypothetical questions to the VE.  Any medical reports generated after the ALJ rendered his opinion shall also be considered.

By her second claim, Plaintiff argues that the ALJ's broadly stated reason for rejecting her subjective allegations of pain is insufficient.  Thus, she urges that her case must be remanded due to the ALJ's failure to provide adequate and specific reasons for discounting her pain complaint. (Doc. 23 at 17-18).  The Commissioner counters that the ALJ did provide specific reasons for rejecting Plaintiff's complaints. (Doc. 24 at 10-11).

In this circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms.  By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the

---

[12]To the extent Plaintiff complains that the ALJ failed to consider her significant and chronic fatigue and abdominal pain and should have included such in the hypothetical questions to the VE, aside from a generalized complaint about fatigue, my review of the record does not reveal any limitations that the ALJ should have considered but did not with respect to these symptoms.

11

alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986)). A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. Id.; Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision. Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995); Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Hale, 831 F.2d at 1012.

Here, the decision reflects that the ALJ applied the proper standard in assessing Plaintiff's subjective complaints. Although the ALJ did not expressly refer to the "pain standard," his reference to the regulatory provision and ruling (R. 16) reveals his understanding of the applicable standard, and a fair reading of the decision reflects his application of the standard. See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002). Thus, the ALJ found that Plaintiff was not "symptom free" and that she had medically determinable impairments, namely, Morton's neuroma, status post arthroscopic surgery of the right knee, and chronic pain syndrome, that could reasonably give rise to the type of knee, foot, and pain and limitations alleged, just not to the extent that the limitations resulting therefrom were disabling.

Further, the ALJ discounted Plaintiff's subjective complaints of *disabling pain* and limitations on a finding that such were inconsistent with the medical record and Plaintiff's testimony in that Plaintiff's pain was somewhat remediable and not entirely supported by relevant abnormal findings in the medical and clinical record. (R. 16). This comment must be read in the context of the ALJ's review of such record. (R. (R. 13-15). The ALJ also noted that Plaintiff's treating orthopedic surgeon and podiatrist repeatedly indicated she could perform "light duty activity." (R. 13-14). While I consider this a close call, I must conclude that the record as a whole supports the ALJ's reasons. To this end, it is undisputed that Plaintiff's treating orthopedic surgeon and podiatrist repeatedly opined that Plaintiff was able to perform a restricted range of light duty activity.[13] (R. 136-38, 142-43, 154, 161, 167). Finally, it is worth reiterating that, even if the court finds that the evidence preponderates against the ALJ's decision, it may not reweigh the evidence or substitute its own judgment for that of the ALJ. See Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990); Bloodsworth, 703 F.2d at 1239. While all involved would have been better-served had the ALJ been more specific in his reasons for concluding that Plaintiff's subjective complaints were not entirely credible, when the decision is considered in full, the ALJ has stated adequate and minimally explicit reasons in support of his decision. A remand for this alleged error alone would serve no useful purpose.

---

[13]To the extent that the ALJ may have equated these doctors' opinions of light duty activity with the RFC to engage in light exertional work activity, I disagree that the two are synonymous. On remand, this should be addressed with greater specificity.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, and I recommend that it be reversed and remanded for further proceedings before the Commissioner consistent with this Report and Recommendation. I further recommend that the Clerk be directed to enter Judgment in favor of the Plaintiff and to close the file, and the matter of fees and costs shall be addressed upon further pleadings.

> Respectfully submitted this
> 17th day of August 2007.
>
> THOMAS B. McCOUN III
> UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; see also Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies furnished to:
The Honorable Richard A. Lazzara, United States District Judge
Counsel of Record